We'll call the next case Louisiana Forestry Association Vs. Secretary Department of Labor. Mr. Pierce? Yes, Your Honor. Good morning. Good morning. You may proceed. My name is Wayne Pierce. I'm here representing the appellants and the employer associations. I'd like to reserve five minutes for rebuttal. You're done? Your Honors, the primary issue in this case concerns the ability of the Department of Labor to issue rulemaking authority pursuant to the H-2B program, which is one of the visas within the Immigration and Naturalization Act. And in this particular scenario, Your Honor, we submit that rulemaking authority should not be a secret. It should be something that should be readily apparent, and yet we have expended lots of issues, lots of arguments, and lots of pages on something that is far from apparent. And we now have the benefit of having the Eleventh Circuit address essentially all of the arguments that have been raised to support the Department of Labor's position in the context. When you say, Mr. Pierce, that it shouldn't be secret, I take it from your opponent's briefing that their position is there's nothing secret about the Department of Labor's involvement. They've been doing this for about 60 years. They've been issuing regulations. They've been issuing letter memoranda. They've been publishing a prevailing wage report, and that that's been relied on since the middle of the 20th century. Congress has known about it. They've enacted legislation amending the immigration law since that time, and said nothing to indicate that they don't approve of that. In fact, in the H-1B context, seem to expressly condone it or ask for it, condone it in H-2A context. In that background, I'm curious about your statement that this is secret. It seems like it's been a pretty open process as far as the Department of Labor is concerned. No? Far from it, Your Honor. You're referencing now that what developed since 1968, and that initial regulation was not the scheme that we operate under these days. And as that scheme has been developed, there was a progression within how the Department of Labor responded, which I elaborated on in our reply brief, which allowed them to evade any significant judicial review because there was a lack of substance to their proceeding. They were intentionally designed to be very general. That was their term, general concepts, general principles, general procedures. And over time, it was not actually until 2008 that they took what were unpublished, unofficial teagles, technical advisories, guidelines, et cetera, and put them pursuant to a properly developed administrative regulation in 2008. Well, if you acknowledge that they could regulate in 2008... Which we don't. Oh, I thought you said a properly issued regulation. First of all, we're not challenging what happened in 2008. That's not part of this case. How can you not? I mean, isn't a necessary corollary of your argument that if it's unlawful in 2011 or unlawful in 2013, it has to have been unlawful in 2008? I'm not disputing that, Your Honor. I am saying to you that that issue has been raised in other cases, and it has not been raised as part of this case. We are here challenging what happened in 2011. I'm premise of your argument that you want us to accept is the Department of Labor has no authority to act in this sphere at all. How can you then say, take us back to the 2008 Department of Labor regulations? Isn't it inescapable that if the regulations in 2011 or the interim final rule in 2013 are unlawful, that 2008 has to be unlawful? I am not disputing that, Your Honor. Then how can your argument or position be that we can ignore that in any order that we would be writing? I'm not sure how you would have us write an opinion, an order that says it's all unlawful, but go ahead and do that unlawful thing from 2008? Our case is only limited to challenging 2011, and the consequences for where we go after that is an issue for another day. That is not within the confines of our complaint in this case. Okay, I'm not sure how it's an issue for another day, because any order that we would write that would give you what you want would mean that 2008 would be in effect, right? It would be condoning an unlawful act. Given the scope of where the issues are right now, with the issues that have been raised regarding Wagner-Peyser, acquiescence, right on down the line, if all of those are reached, because they were not raised as bases for this particular 2011 regulation, this 2011 regulation proceeded on a subdelegation authority of power directly dispensed from DHS to DOL, and that's the only asserted basis for the regulation that we are challenging today. Only since that time, since the record was closed have all these other issues shown up, and we have now responded to them. We believe that they will fall also, and to the extent that anything that happened in 2008 may rely on these other ancillary supporting bases, then it will be subject to the same challenge. You say in your brief at page 46 that the reenactment rule is a technique for interpreting congressional silence. It is a garden variety aid in statutory construction, which I think is right. Then you say it in the very next sentence, the reenactment rule has been roundly criticized, and you go on to say it's a risky thing. If it's a garden variety piece of statutory construction, an aid in that, what makes it risky? Why wouldn't we look at what Congress has done against the backdrop of DOL's involvement in this over the years? For the reasons that I've already raised, and which this Court has adopted in numerous instances in which it has walked away from the reenactment rule, it is a risky proposition because what you are relying on fundamentally is congressional inaction, silence. How do you interpret when someone doesn't say anything? That's what the reenactment rule, that's the fundamental underpinning for it, it's the fundamental downfall, it's the fundamental reason why it is a risky proposition, and why in the world. So when, if ever, under your view, would the reenactment presumption apply? I'm not sure that there's much life left in that, Your Honor, and it certainly doesn't apply in this case. There are too many problems with trying to determine meaning from congressional silence, especially in this case, when we have a well-developed regulatory scheme from Congress. Then we get to 1986 with the IRCA, Immigration Reform and Control Act, which does not touch, doesn't say anything about the H-2B program. It cleaves off the agricultural component. It expressly gives rulemaking authority to the Department of Labor for agricultural workers that used to be included within the same H-2 program, but doesn't say anything at all about what we're here for, which is non-agricultural workers. That is, as strong an example as any, is where Congress was silent as to what to do, and does not indicate anything about Congress's preference to endorse or support or anything of that sort. What do you, what do you think the consultation should look like? You're unhappy with the way the consultation is working now. You say it can't really be called consultation. What do you think the Department of Labor ought to be doing? If Homeland Security wants to reach out to them, how should they do it? They should request advice on a case-by-case basis, which is what Section 1184C says. It says specific cases, not across the board, not globally. It actually says in 1184C, case-by-case specific advice. And the practicality of that would be what? Every single H-2B visa would have to go over to the Department of Labor as opposed to having guidelines given from the Department of Labor. Where Homeland Security chooses to take it, once properly implemented, it's certainly their choice. And ultimately, they are the ones charged with making the determination under 1184C. It is up to them to make the determination, not to cede the decision, not to offload their jurisdiction as we have phrased it, but to actually make the determination. In this case, the vast majority of the decision has been ceded to the Department of Labor. And the vast majority of the process of making the decision has been ceded to the Department of Labor, and very little remains to be decided by the Department of Homeland Security. The determination is not being made by Homeland Security. It's being made by the Department of Labor. Okay. Okay, we'll have you back on rebuttal. Thank you very much, Mr. Pierce. Thank you. Mr. Forney. Good morning, Your Honors. Jeffrey Forney, Department of Justice for Department of Homeland Security. The LFA's case turns on a single argument fashioned in several different formats, that the Department of Labor's jurisdiction over the H-2B program does not include legislative rulemaking authority because they do not have an express grant of authority in that particular statute. But LFA's case hinges on the jurisdictional apparition that the Supreme Court recently FCC, where Justice Scalia stated for the majority that the only question in cases like this involving legislative rulemaking authority is what Congress permitted the agency to do. And in this case, the Department's use of legislative rules to structure its consultation with DHS under Section 1184C1. Why don't you respond, if you would, Mr. Forney, to what I understand a central point to be, and that is that while the English language is certainly malleable, there's a certain point at which you're calling something something it's not. And that to say it's consultation when what the Department of Labor is doing is issuing the prevailing wage and saying you will pay this or you won't get a labor certification, and if you won't get a labor the Department of Labor, in effect, not consulting, but through legislative rulemaking, governing the visa program, and that's contrary to the statute. I probably haven't done it justice, but that's what I understand the argument to be. And that there's no fair interpretation of the word consultation that can be stretched to fit that without just doing unholy violence to the English language. What's the response to that? How do you get to call a consultation if what the Department of Labor is doing is saying this is what you'll pay or you don't get a visa? Well, the judgment ultimately was exercised by the Department of Homeland Security under the direction of Congress in the statute that said you must consult with appropriate government agencies, and under the circumstances. I mean, that you're just going to do is, would you call it consultation if the Department X, who has the power to regulate a particular area, but was supposed to consult with Department Y, said we're going to turn over all authority to Department Y? That's not consultation, is it? Well, it would be structured by the relevant inquiries under the statute, which would be... I'm sorry. I would like to press you for a yes or no answer to, is my hypothetical consultation or not? Yes. It is consultation. It still would be consultation. So, consultation can mean, in your view, turning over, in my hypothetical, entire authority to another agency. In the most general hypothetical sense, it could be, but your question has to be understood... Where do you find that in the normal English language definition of consultation? Well, I think the term itself is subject to several meanings. So, if you have at least two or more meanings, it's ambiguous, and you should defer to the agencies in this case, or Chevron. Under what meaning, what meaning anywhere, except maybe in the bowels of D.C. bureaucracy, does consultation mean delegation? Because that's the argument that's being made. HHS has delegated to DOL authority that HHS alone has. And you're standing here, as I'm assuming you're guided and instructed and asked to do, and telling us, yes, consultation and delegation are one and the same thing. And that's a remarkable proposition, and I guess we're trying to figure out... I know Chevron deference is an important thing, but does it allow you to rewrite the English language? No, it does not, and I don't think we have rewritten the English language. I think the trial court's analysis is appropriate on this point. If I go to a doctor and I want to consult with a doctor, I don't have any expertise. I've never been educated medically. Maybe I look at stuff online, but I presume that when I go to an expert and I consult with them, I am going to take their advice? No, of course, that's not an apt analogy, is it? The analogy would be, if I went to Dr. X and he determined that before he would prescribe treatment, he wanted to consult with a specialist about some aspect of my disease, he might consult with the specialist. But I, the patient, would still be looking to the doctor I went to to make the decision after taking account of, but not being ruled by, what the specialist did. Yes? Isn't that the right analogy? No, I think it sends the analogy downstream too much. I'm sorry if I'm mixing metaphors, but no, I think in this case, the Department of Homeland Security is like the patient, and the Department of Labor is the primary doctor. So, in short, Congress didn't know what it was doing. That's the end point of your argument, which is Congress gave this authority to somebody that has no more clue about how to regulate than a patient does about how to diagnose his or her own cancer. And therefore, it has to go to the good doctor. No, I'm sorry, I respectfully disagree. Congress knew what it was doing, and what it was doing, we have to look at the structure of the statute. So, if I could scale back for a moment, the primary inquiry in any of this is under 1101A15H2B, which is that a determination has to be made whether there are unemployed persons in the United States to occupy the job that the employer proposes to, for which the employer proposes to import foreign workers. That is the relevant factor. Now, the Department of Homeland Security has control over the admission of foreign nationals, but under 1184C1, Congress expected, as it knew historically, legacy INS and NDHS had done, that they would look to the Department of Labor, because of its special competency and labor market determinations, that there would be an assessment of whether there were unemployed persons in the United States. It's that consulting regime that Congress established. Is HHS free to say, you know what, we know what you say about prevailing wage, and we understand what you've instructed the Department of Labor, but we think these visas should issue anyway. Do they still have that authority? I'm sorry, the Department of Homeland Security? Right. If I didn't make that clear, I apologize. Yeah, Homeland Security, can they still issue the visas? Not under the current regulatory regime, but they look to the Department of Labor. And what's left of their authority? Well, on wages and working conditions, they look to the Department of Labor. If there's other conditions that have to do with the admission of foreign nationals, the Department of Homeland Security still has control over those issues. So your whole argument is premised upon, I'm trying to understand it, you're not claiming that you have authority as a result of a subdelegation from DHS to issue these rules? No. All right. So it's just solely from that statutory provision that requires consultation? Well, no. Actually, the Department of Labor's rulemaking authority in this case is over-determined. The Wagner-Peyser Act historically actually gives an express grant of rulemaking authority over the recruitment of U.S. workers in the context of a foreign labor program. But even if the Wagner-Peyser Act didn't provide an express grant of rulemaking authority, historically the Immigration and Nationality Act does through 1184C1 through the term consultation. And Congress was well aware of that. We see that in the legislative history under the Immigration Reform and Control Act of 1986. Are there other statutes that have this consultation requirement? Well, I came up with two examples. There's a D.C. Circuit case, Barnstable v. FAA, 659 Fed 3rd 28. And the D.C. Circuit there specifically discussed Interior's license authority over wind farms. Apparently these wind farms can be constructed out in the Outer Continental Shelf. And in this case, they were constructed out beyond Long Island. Interior has delegated authority by Congress to license these wind farms. But Interior actually looks to the FAA to make a safety assessment and actually send the applicants for the wind farm to the FAA, which in turn uses its own legislative rules to make safety assessments. Are you aware of whether the FAA determination cuts off what the Department of Interior can then do? Well, my understanding from the discussion in the case is that basically the Interior takes at its word the FAA and doesn't look beyond that determination. I can understand that. But the question that we're kind of wrestling with, or at least that I'm wrestling with here is, I can understand an argument from the government that HHS is entitled to listen to. The DHS. Excuse me. Thank you. The DHS, Department of Homeland Security, is entitled to listen to DOL. They're entitled to do that. They're, in fact, instructed to do that through the consultation statement. And that Department of Labor is entitled to structure its form of consultation in a more formal and public way than an ad hoc method as advocated by your opposing counsel. I could have thought that that was your argument when I read your briefing. But as you stand here before us today, I'm understanding your argument to be a little more aggressive than that. Maybe I'm misunderstanding it, which is that the Department of Labor not only has the authority to provide this information to DHS, but once it's said it, there's nothing left for DHS to do. Well, the Department of Labor doesn't make that particular determination. I'm sorry if I wasn't clear on that point. It's the Department of Homeland Security that did through its regulation. In fact, the 2008 regulation that the LFA relies on and would like this court to have us all fall back on is where the Department of Homeland Security most recently said that it didn't have competence in this area and would then look to the Department of Labor to make that initial determination. They would not look beyond the Department of Labor's assessment of the labor market conditions. So it's not the Department of Labor that is... The key question is, could the Department... For me, an interesting question at least is, does DHS have any authority, in your view, to say, I understand what you've said, Department of Labor. In this instance, we're still giving a visa to this person. And I understand you to be saying, no, they can't do that. In principle, the statute doesn't preclude that. The Department of Homeland Security could take that route if they chose. It just so happens that the current regulations that the Department of Homeland Security, under which it operates currently, does not permit that. But in principle, under the statute, they could take the route that Your Honor mentioned. They could say, we're looking to the Department of Labor for a labor market assessment. But under this particular case, we're not going to accept that. But they'd have to go through rulemaking. They'd have to go through new rulemaking. I have to ask indulgence from my colleagues here for a couple minutes. Absolutely. There's a very important thing that I'm wondering about, and ask you to help me with an administrative law point here that has puzzled me. There's this interim final rule. And in the briefing, you seem to take the position that, you know, as soon as Congress gives us money, we're going back to that 2011 rule. It's still good. It's still alive. Right. And I'm wondering how that works. If you have promulgated a new rule, you've called it an interim final rule, and it purports to regulate in a legislative manner on exactly the same subject as the 2011 rule. On what principle can you go back to the 2011 rule without going through notice and comment again? Do you have any authority for the proposition that you can put 2011 on the shelf, pass a new rule, and then when you decide you want to, cash back to the old one without going through ordinary administrative processes? Yeah, I have two points in response to that question. Number one, the interim final rule does not regulate on the precise area that the 2011 rule. They're both wage rules, but they are substantively different. Help me out when you say this. Right. They're purporting to govern. They do. They govern the same subject area generally, but they are different rules. And I'm not just saying that splitting hairs in the sense of one rule was temporally distinct from the other. They actually set forward different substantive standards. The interim final rule relies upon a wage regime that is different than the 2011 wage rule. Precisely. That's the point. You have legislated a new rule on the same... No. It's not a new rule because it is an interim final rule. Help us with that. Touching on a bit of an esoteric point, in administrative law parlance, an interim final rule is one that is published on an emergency basis. In other words, it didn't go through full-blown notice and comment rulemaking before it became final. Right. But it has all the force... It does. It has all the force and effect of law. And it doesn't expire by its own terms, right? Well, the agency will come out, as typically agencies do, with a final final rule. After receiving post-promulgation comments, they will respond to those. Right. And those comments are supposed to inform the dealing with the interim final rule. Right. That is, the final final rule is supposed to grow out of the interim final rule. It does. It doesn't allow you, does it, to say, now our final final rule is the old rule. We get to go back to 2011. Oh, no. I don't expect that the Department of Labor will go back to the 2011 rule in the final final rule because the purpose of the interim final rule is to establish a stop gap during this hiatus period. That's perfectly understood. I mean, I don't have any trouble getting my head around what you want to do. What I'm having trouble with is, and maybe it's just theoretical, but it doesn't feel like it because you've said repeatedly in your briefing, that 2011 rule, we know Congress keeps telling us we can't have money for that. And they clearly don't like it. But once they give us money, we're going with it. Right. But having replaced it with something. They haven't. So the fact that it's an interim final rule means you get to go back to 2011 is what you're asking for is where's the law for that? Where's the law that says we legislate it again? Motor vehicle manufacturers, the Supreme Court case from 1983. Yeah. And subsequent case law, including case law in this circuit where the Third Circuit dealt with EPA that tried to suspend indefinitely a rule. And this court held that you have to, suspending or terminating a rule, abrogating a rule, is a rulemaking which requires further notice and comment rulemaking. Well, doesn't reinstatement then of the old rule require? No, it doesn't. There is D.C. Circuit case law, which I cited in this supplemental memorandum that says that if a rule is held in advance by a congressional appropriations ban, once that ban expires and the rule has appropriated funds, it by operation of law takes effect. And that will happen on October 1, 2013, presuming Congress finds it within. Yeah, which it didn't in the last several rounds. But when you passed the 2011 rule, did you say, did you go through a separate process of abrogating the 2008 rule? Or did you just pass the 2011 regulation and say, and this replaces 2008? It said it replaced 2008. Okay. Right. So you didn't go through notice and comment to abrogate 2008. Oh, yes we did. Notice and comment to put in place 2011, right? A replacement rule. Right. When you went through the process of getting 2013 in place, are you saying you had to have gone through notice and comment to get rid of 2011? You couldn't just replace with 2013? Oh, no, because I expect, maybe I'll regret stating this, but things can change. But what I expect to happen with the final, final rule as a follow-up to the interim final rule is that the department will again make clear the temporal nature and scope of the interim final rule, which is to set substantive standards during this hiatus period. And once that hiatus period ends, it by its terms will end as well, because it already has a rule ready and waiting to be funded and to take its place. Okay. In any event, the interim final rule, as I think we've mentioned in our supplemental brief, does not moot this case, because we have not conceded that the Department of Labor doesn't have rulemaking authority either expressed or implied under the INA. Okay. Thanks very much. Thank you. Appreciate it. Mr. Tedenham? I just want to come back to the consultation question briefly and to make clear that what Your Honor has pointed to as the central issue here, is whether this is consultation, has nothing to do with DOL's right to regulate, to issue legislative rules. I think we all agree. So you said in your brief that the United States Code contains, quote, thousands of And I'm still wondering whether there's any case law out there, because I didn't see it cited by either side, in which these thousands of other alleged consultative agency situations subject to a court ruling on whether or not they allow, in effect, legislative rulemaking authority. I'm not aware of any, but if I may, Your Honor, the question of DOL's right to issue rules simply is a question of when Congress says you have to consult with appropriate agencies, does that give some part of the administration of the statute, the consultation part, to the agency selected by DHS? And I think you have to say yes, it gives that little piece of administering the statute to the consulting agency. If you give a piece of the statute to an agency to consult, to administer in some way, you give them rulemaking power by implication to structure their consultation, not to write rules about the whole program, not to govern the world by regulation, but to write regulations to structure the consultation. Well, Mr. Tenham, answer the point that we get from the plaintiffs here, which is this is not a structuring of a consultative relationship. This is a full and complete delegation of the authority, and DHS no longer has any say in it because of how they've set it up. DOL is completely in the driver's seat. DHS isn't necessarily even in the same vehicle. They're just running along behind. They're in that locked box. Right. Okay, that's what I wanted to say. The question of DOL structuring its consultation is one question. There is a separate question as to what DHS chooses to do with that consultation. And the question of whether the certification issued pursuant to DOL's rulemaking is a mandatory piece of getting an H-2B visa is not a decision that DOL makes. That is a decision that the Department of Homeland Security made in 2008. Prior to 2008, DHS's regulations said you have to apply for a labor certification, and then you come to us and you either attach the approved labor certification or explain why you haven't been able to get one, giving DHS the authority to simply say, well, even though you didn't get a certification, we'll issue the visas. That happened in two occasions that I am familiar with over the 60-year period, most famously in 1978. DHS, or then it was INS, just overruled DOL's refusal to issue a certification. But in 2008, by notice and comment rulemaking, DHS modified one little section of its H-2B rules and just said, look, we have no expertise in labor market. So that piece of the H-2 program, we're just going to say you have to get it. So I understand your position to be then DHS chose to bind itself to what DOL said, and they're entitled to do that. Is that it? Well, whether they're entitled to do it or not, I think they are. But it has nothing to do with DOL's right to issue rules to come up with the answer to the consultation. As to whether they have that right, I want to correct something Mr. Forney said. He made it sound like the labor market determination is the only issue involved in granting these visas, and that's not the case. You have to demonstrate that they are temporary jobs, and DHS does not defer to DOL on the temporariness of the job. The H-2B worker has to be a permanent resident of a foreign country. He can't be abandoning his foreign home. DHS doesn't defer to DOL on that, and DOL does no pining about it. There are multiple aspects of this whole program that are the responsibility of DHS. One piece of that, granted an important piece, is the labor market determination. But the Department of Labor can write rules to answer the question about the labor market, and I would submit that DHS can make that a necessary requirement. But if that's wrong, it's a fault with DHS, not DOL. Understood. Thanks. Any questions? I don't have any. Okay. Thanks very much, Mr. Tunham. I appreciate your contribution, and Mr. Pierce, you've got your rebuttal. Yes, thank you. Picking up on the last point, yes, there are three items that we have identified in our reply brief where both DOL and DHS redundantly make the same determination. So picking up the point you just heard on temporary need, they both do it. Department of Labor says, prove to us you have a temporary need. We do that. Then we go around the corner and we've got to do it again. Same exact thing. Yeah. And if we don't satisfy the first one. Fortunately, you've got all that paperwork and you can just hand it to the next agency, right? That's actually not good enough. We've gotten multiple requests for evidence on the exact same thing that we just got approved for where that is not satisfactory. Now, next point. As to legislative history, there's not a lot, but when the INA was passed in 1952, Senator McCarran, in conjunction with the Judiciary Committee, did a marvelous report letter that covered a lot of stuff. And that was in the beginning of the several bills that ultimately led to the passage of the INA. And during the hearings process, two witnesses came forward, one from AFL-CIO and the other was from an employer organization. The employer organization wanted to have a consultative function. The AFL-CIO wanted to have the H-2 program structured exactly like the PERM program, which is the program that brings in foreigners, foreign residents for permanent residence. And the permanent residence visa actually does say what they want the H-2B program to say, and it has said it for 60 years. So does that, you know, and I understand your assertion to be, well, that means the Congress didn't mean for it to happen in the other half of the H-2 program, the non-agricultural, but can a legitimate argument be made that they didn't touch the non-agricultural piece because they didn't need to, everybody understood it was working that way, they only addressed it on that one side because they were dealing with a new issue and they were being explicit about the roles of the Department of Agriculture and the Department of Labor. Why is that not a fair way of looking at it? Or I should say, why is that not at least as fair a way of looking at it as to say, well, they said it here, they didn't say it there, therefore? Because that's not how it went down. They were dual-tracked, they were not intertwined, they were handled completely separate. All the debates, all the hearings, all the witnesses treated them differently and no one tried to roll the PERM program, which is a different statute, it's not rolled up in 1184, it's not rolled into the H-VISA program. In fact, you're asking us to draw an inference from silence, which is exactly what I thought you told us in a different context we shouldn't do. I don't think it's silence at all. They were presented with two options and they made a choice. They said in this case... or we should draw some inference about what they thought about the other choice from their silence with respect to the other choice. Fair enough. They were presented with two options, they made a choice. The question I put to the intervener is really what I meant to put to you. You're the fellow who says there are thousands of other consultative, but you don't cite any. Is there any case on this in these other statutes? Well, let me begin with the first part and I'll get to the second part. When I put in the word phrase that appears in 1184C, there are five hits alone in the Immigration and Naturalization Act itself. There were hundreds and hundreds of that exact phrase after consultation with appropriate government agencies. None of which you chose to share with us. Well, it would have been a very long citation. Well, that may be, but the argument you want to make, I mean, I can't... how can we evaluate that if we don't look at the specific statute that you're saying? You don't have to give us thousands, you could give us a half dozen. Well, but my point was different. My point was that no matter how many there were, if it was one, or in my case, it maxed out my Lexis account, which has a 3,000 hit limit, so I don't know how many there were. You certainly have my sympathy on that, but is there any case law in these other statutes? That's my point. I could not find a single instance, and nor has anyone else found a single instance, where a court has actually said, in a consultation role, the receiving party, DHS, can give all of its power, or virtually all of its power, to a delegee and still call that a consultation. Well, that's really the key question, right? The giving of all the power, because what we're hearing from the other side is, they've accepted the expertise of the Department of Labor as to an important, but not all-encompassing piece of the determination, and they haven't given all their power. Are they misleading us? Are they inaccurate in the assertion that there's still decision-making authority going on at DHS? In my opening brief, there's a chart where I try to break apart how much really is given and how much is remaining, and I believe that the only part that's remaining, and you heard from Mr. Tottenham, is determinations regarding whether or not they're a foreign resident and intend to return there when this is all over. But all the other things, and I identified ten different elements that the Department of Labor has exclusive or duplicative jurisdiction over, and that's the ball wax. Okay. All right. Thanks very much, Mr. Pierce. Appreciate the arguments on both sides. Well argued, and we'll take the matter under advisement.